STATE of Missouri ex rel. Clay
CROWE, Respondent,

v.

MISSOURI STATE HIGHWAY
PATROL, Appellant.

No. WD 64374.

Missouri Court of Appeals,
Western District.

Aug. 2, 2005.

Charles S. Birmingham, Assistant Attorney General, Jefferson City, MO, for appellant.

Timothy W. Van Ronzelen, Jefferson City, MO, for respondent.

Before JOSEPH M. ELLIS, Presiding Judge, PAUL M. SPINDEN, Judge and VICTOR C. HOWARD, Judge.

JOSEPH M. ELLIS, Judge.

The Missouri State Highway Patrol appeals from a judgment entered in the Circuit Court of Cole County reversing the Highway Patrol's suspension of Sergeant Clay Crowe for eight hours without pay. For the following reasons, we reverse the circuit court's decision and order the suspension reinstated.

The facts surrounding the underlying incident are essentially undisputed.[1] On February 5, 2003, Sgt. Crowe was serving

---

1. Indeed, most of the facts surrounding the incident are established by a joint stipulation of facts filed by the parties, though additional evidence was presented to the trial court.

as sniper for the SERT team in Troop D of the Highway Patrol when he was dispatched to assist Dallas County deputies in serving a high-risk arrest warrant on Jim Payne, who was wanted on numerous arrest warrants and was believed to be armed and dangerous. Sgt. Crowe took up a position outside of the house where Payne was thought to be located in order to provide cover to the deputies serving the warrant. After the house was surrounded, Deputy Harold Thieson attempted to contact Payne using the loud speaker on his patrol car. Eventually, Payne's sister-in-law, Zoe Huber, the owner of the residence, came out of the back door of the house and spoke with Deputy Thieson. Ms. Huber told the deputies that Payne was in the house but that he refused to come out. She also told the deputies that Payne was not armed.

Deputies then entered the house. Shortly thereafter, Deputy Bobby Sharp waved Sgt. Crowe to the rear of the house and informed Sgt. Crowe that Payne was in the house and was pointing a handgun in his mouth. Deputy Sharp asked Sgt. Crowe to provide cover for the deputies inside. After being unable to find a window that did not have the blinds drawn, Sgt. Crowe entered the house through the back door. Sgt. Crowe saw two deputies at the end of a hallway. Beyond the deputies, Sgt. Crowe could see Payne sitting in a chair in the living room with a handgun in his mouth. Sgt. Crowe heard Payne threatening to take his own life and refusing to comply with the Deputies' repeated requests that he put down his weapon. At one point, Payne stated that he was not going back to prison and told the deputies, "I wish you guys would just go ahead and kill me."

Sgt. Crowe and a deputy then asked Ms. Huber to talk to Payne. Ms. Huber was unsuccessful in convincing Payne to put down his gun. As Ms. Huber was leaving the house, Sgt. Crowe asked her if Payne was capable of taking his own life. She responded that she felt sure he was very capable of doing so.

Sgt. Crowe then slowly crossed the room, in plain sight of Payne, and took up a position by the stove, where he had a clear view of Payne's profile. Sgt. Crowe asked deputies to make sure no one was on the west side of the house, which would be in his line of fire. Sgt. Crowe observed Payne close his eyes and place the weapon in his mouth. Payne then began to take deep, deliberate breaths and appeared to be squeezing the trigger tighter with his right thumb.

Sgt. Crowe then attempted to talk with Payne in an effort to get him to put down his gun and asked Payne if he had children. After Payne said he had a son, Sgt. Crow offered to get Payne's son on the phone. Payne responded that he did not want his family involved in what he was about to do. Eventually, Payne stopped responding to Sgt. Crowe. Shortly thereafter, Payne then tilted his head back, closed his eyes and started stroking the gun with his hand while the barrel was in his mouth and his thumb was on the trigger. Payne then began to visibly apply more pressure to the trigger of the weapon.

Believing that Payne was in immediate danger of killing himself, Sgt. Crowe fired one round from his rifle from a distance of approximately 13' 6" in an attempt to disarm Payne. The round struck the handgun along with Payne's right hand in the webbing between his thumb and forefinger. The shot dislodged the gun from Payne's hand and sent it flying across the room. Deputies them rushed Payne and restrained him. Payne was examined by paramedics at the scene and was subse-

quently treated at the hospital for a superficial wound to his hand.

Pursuant to Highway Patrol policy, the shooting was investigated and the report was forwarded to the Use of Force Review Board, which is empowered to examine the evidence that was collected, further investigate the incident, to classify the use of force as justified or unjustified,[2] and, if the use of force is determined to be unjustified, to recommend disciplinary action. Subsequently, the Review Board issued its report in which it found that Sgt. Crowe "decided on a plan of action he was not trained for, that involved considerable risk, which did not rise to the level of using deadly force and created considerable liability for himself and the Highway Patrol. The use of force was not justified and Sergeant Crowe will receive a suspension of pay for eight hours...."

Sgt. Crowe appealed the Review Board's recommendation of discipline. Subsequently, Superintendent Roger Stottlemyre affirmed the Use of Force Review Board's decision and suspended Crowe for eight hours without pay. In rendering that decision, the Superintendent stated: "Sergeant Crowe, as a supervisor, must realize his actions were not in compliance with Patrol rules and regulations. Even though this incident did not cause the loss of life, by not following established policy and practices, it could have easily had a disastrous outcome."

Sgt. Crowe filed a Petition for Writ of Certiorari in the Circuit Court of Cole County seeking review of this non-contested administrative decision pursuant to § 536.150.[3] The case was tried to the court on June 17, 2004. That same day, the trial court entered its judgment, finding that Crowe's "use of force with respect to Mr. James Payne was justifiable" and concluding that the Highway Patrol's "imposition of discipline upon [Crowe] for that use of force is unlawful, unreasonable, arbitrary and capricious, and an abuse of discretion." The court ordered the Highway Patrol to

---

2. In determining whether the use of force was reasonable, the applicable General Order issued by the Superintendent of the Highway Patrol sets forth the following guidelines:

> The reasonableness of a particular use of force will be reviewed from the perspective of a reasonable officer in that situation. The proper application of force requires careful attention to the facts and circumstances specifically known to the officer involved at the moment the force was used, including:
> 1. whether the suspect posed an immediate threat to the safety of the officer or others.
> 2. the severity of the incident.
> 3. whether the suspect was physically resisting arrest in an aggressive manner.

3. All statutory references are to RSMo 2000 unless otherwise noted. Section 536.150.1 provides:

> When any administrative officer or body existing under the constitution or by statute ... shall have rendered a decision which is not subject to administrative review, determining the legal rights, duties or privileges of any person ... and there is no other provision for judicial inquiry into or review of such decision, such decision may be reviewed by suit for injunction, certiorari, mandamus, prohibition or other appropriate action, and in any such review proceeding the court may determine the facts relevant to the question whether such person at the time of such decision was subject to such legal duty, or had such right, or was entitled to such privilege, and may hear such evidence on such question as may be properly adduced, and the court may determine whether such decision, in view of the facts as they appear to the court, is unconstitutional, unlawful, unreasonable, arbitrary, or capricious or involves an abuse of discretion; and the court shall render judgment accordingly, and may order the administrative officer or body to take such further action as it may be proper to require; but the court shall not substitute its discretion for discretion legally vested in such administrative officer or body....

rescind the discipline imposed, to remove any mention of the discipline from Crowe's personnel file, and to return any salary that had been withheld from Crowe as a result of the discipline imposed.

On appeal from the circuit court's judgment, the Highway Patrol contends that the trial court erred in ordering it to rescind Sgt. Crowe's suspension. The Highway Patrol argues that the trial court improperly substituted its discretion for the discretion legally vested in the Superintendent and that the Superintendent could not be found to have abused his discretion in issuing the eight-hour suspension of Sgt. Crowe.

■■■■ The parties concede, as they must, that Sgt. Crowe's suspension was the result of a non-contested administrative action and that the trial court properly reviewed the matter pursuant to § 536.150.[4] "[T]he role of the circuit court on review of an administrative decision in a noncontested case is more encompassing than on a review of a contested case." *State ex rel. Rice v. Bishop,* 858 S.W.2d 732, 735 (Mo.App. W.D.1993). "In noncontested cases the circuit court conducts a de novo review in which it hears evidence on the merits of the case, makes a record, determines the facts, and decides whether, in view of those facts, the [administrative officer]'s decision is unconstitutional, unlawful, unreasonable, arbitrary, capricious, or otherwise involves an abuse of discretion as set out in section 536.150.1." *State ex rel. Stewart v. Civil Serv. Comm'n of St. Louis,* 120 S.W.3d 279, 283 (Mo.App. E.D. 2003). "The circuit court does not defer to facts found or credibility assessed by the agency and need not conform doubtful evidence to the agency's decision." *Missouri*

*Nat'l Educ. Ass'n v. Missouri State Bd. of Educ.,* 34 S.W.3d 266, 274 (Mo.App. W.D. 2000). "[T]he trial court determines the evidence and renders judgment from that evidence." *Legal Communications Corp. v. St. Louis County Printing & Publ'g Co.,* 24 S.W.3d 744, 750 (Mo.App. E.D.2000). The circuit court is to determine the evidence and, on the facts as found, adjudge the validity of the administrative decision. *Rice,* 858 S.W.2d at 736.

However, the "sweep of adjudicative prerogative accorded a circuit court by § 536.150.1 is foreshortened where the review involves the exercise of discretion." *Id.* "The provision in § 536.150.1, that in such a judicial inquiry 'the court shall not substitute its discretion for discretion legally vested' in the administrative officer confines the judgment to 'exclusively legal considerations.'" *Id.; see also Missouri Nat'l Educ. Ass'n,* 34 S.W.3d at 280. "It thereby takes care that the court not infringe on an authority reserved to the legislative or executive branches." *Rice,* 858 S.W.2d at 736.

■■■■ "In a noncontested case, this court reviews the judgment of the trial court and not the agency, and thus the standard of review is the same as in any other court-tried case." *Hundley v. Wenzel,* 59 S.W.3d 1, 5 (Mo.App. W.D.2001). "Thus, the scope of appellate review is governed by Rule 73.01 as construed in *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976)." *Missouri Nat'l Educ. Ass'n,* 34 S.W.3d at 274–75. The trial court's judgment will be affirmed "unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously

---

4. "Uncontested cases for which no other method of judicial review is provided are subject to judicial review under Section 536.150 of the Administrative Procedure and Review Act." *State ex rel. Nance v. Board of Trustees for Firefighters' Ret. Sys. of Kansas City,* 961 S.W.2d 90, 92 (Mo.App. W.D.1998).

applies the law." *Legal Communications Corp.*, 24 S.W.3d at 750. "Accordingly, the appellate court reviews the circuit court's judgment to determine whether its findings that the agency decision was or was not unconstitutional, unlawful, unreasonable, arbitrary, capricious, or the product of an abuse of discretion rests on substantial evidence and correctly declares and applies the law." *Missouri Nat'l Educ. Ass'n*, 34 S.W.3d at 275.

■ Sgt. Crowe maintains, as he did before the trial court, that his actions conformed to the provisions of the general order in that it was reasonable to believe that Payne was about to shoot himself and that the uncontroverted evidence established that he fired his rifle in an attempt to defend Payne's life. Sgt. Crowe further asserts that he could not properly be disciplined by the Superintendent if his actions did not violate the provisions of the general order on the use of force.

Pursuant to his legislatively granted authority, the Superintendent issued a General Order addressing the use of force by members of the Highway Patrol. General Order No. 01–04–0897 addressing the use of force states that the policy of the Highway Patrol is "[t]o place the highest value on human life and the safety of the public and Patrol employees, thereby using only the amount of force which is reasonable and necessary to accomplish lawful purposes." The General Order provides that, when force is necessary, enforcement personnel are to use only the force necessary to effect lawful objectives. With regard to the use of deadly force, the General order dictates:

Officers are authorized to use deadly force against persons, including fleeing felons, only when they reasonably believe such action is in defense of human life (including their own) or in defense of any person in immediate danger of serious physical injury or death.

The General Order further states that:

[w]hen the use of force is authorized, officers should consider a progressive range of options for which they have been trained or equipped. Officers are not restricted to these options, nor must they use them in a particular sequence. Available options include:

1.  Professional presence of the officer or a Patrol canine

2.  Tactical communication including verbal dialogue, requests, instructions, and commands

3.  Tire deflation devices, to encourage the safe stopping of fleeing vehicles

4.  Physical force which causes little or no pain, such as using empty hands

5.  OC aerosol

6.  Level I of the lateral vascular neck restraint and the shoulder pin restraint

7.  Physical force which causes moderate or greater pain

8.  Chemical irritants such as tear gas, CN, and CS

9.  Immediate force, including physical strikes and Levels II and III of the lateral vascular neck restraint and the shoulder pin restraint

10.  Strikes using an approved baton, contact by a Patrol canine, SERT bean bag rounds, and similar force impact

11.  Deadly force.

The General Order goes on to provide that "[t]he decision to use a firearm must be based on facts and the totality of circumstances known to the officer involved at the time."

■ The trial court found that, under the facts, Sgt. Crowe's use of his weapon was justifiable, and, on that basis, the court concluded that the suspension was "unlawful, unreasonable, arbitrary and ca-

pricious, and an abuse of discretion." Thus, the trial court's decision appears to have rested upon a determination that Sgt. Crowe could not be suspended if the shooting was justifiable and the general order on the use of force was not violated. To the extent the trial court so concluded, it erred as a matter of law.

With regard to the powers granted to the Superintendent, Section 43.030.2 provides that "[t]he superintendent of the Missouri state highway patrol shall ... [h]ave command of the patrol and perform all duties imposed on the superintendent and exercise all of the powers and authority conferred upon the superintendent by the provisions of this chapter and the requirements of chapter 650, RSMo." Section 43.120.1 states that "[t]he superintendent shall prescribe rules for instruction and discipline and make all administrative rules and regulations." Finally, Section 43.150 sets forth the procedures for discipline of the members of the highway patrol and provides, in pertinent part, that "[n]o hearings shall be required in the case of reprimands or suspensions of three days or less *which may be imposed at the discretion of the superintendent.*" (emphasis added).

Thus, regardless of whether Sgt. Crowe's use of force was justifiable and/or in compliance with the general order on the use of force, the Superintendent's authority to issue a suspension of three days or less was not restricted to such instances. In contrast to suspensions for more than three days, which may only be imposed "for cause" after a formal charge has been made and a hearing has been conducted before a six-member board, suspensions of three days or less "may be imposed at the discretion of the superintendent" and do not require a hearing. § *43.150.1.* "It is an act of judgment typically prompted by the public interest in a

disciplined and effective police force, and other such extra-legal considerations, that determine the exercise of such a discretion." *Rice,* 858 S.W.2d at 736. This is precisely the type of discretion granted by the legislature to an administrative officer for which the trial court cannot substitute its own discretion under § 536.150.1. *Id.* at 738.

Because the trial court is prohibited from substituting its discretion for that legally vested in the Superintendent, the trial court's review should have been confined to the "exclusively legal considerations" of whether the suspension was unconstitutional, unlawful, unreasonable, arbitrary, capricious, or otherwise involved an abuse of discretion. *Id.* at 736. Thus, the trial court was limited to determining whether the Superintendent could properly have suspended Sgt. Crowe under the facts as found by the court.

At trial, the Highway Patrol introduced into evidence deposition testimony from the Superintendent; Sergeant Carl Land, who provides training to highway patrol personnel; and Lieutenant Robert Rothrock, the team commander of Sgt. Clay's SERT team. All three testified that the decision to pull the trigger under the circumstances facing Sgt. Crowe posed significant risks. They indicated that the bullet might have struck Payne somewhere other than the hand, that a ricochet was possible, and that the bullet from Sgt. Crowe's gun could have caused Payne's weapon to discharge or caused Payne to involuntarily pull the trigger. The Superintendent noted that "as many times as not [Payne's] gun is going to go off." The Superintendent testified that officers are not trained to use deadly force to protect an individual who is threatening suicide because the risks involved cannot be justified. Sgt. Land and Lt. Rothrock testified that officers are trained to maintain cover

and attempt to negotiate in situations like this, and Sgt. Land stated that Sgt. Crowe exercised poor judgment and put himself at risk in deciding to cross the room in plain view of Payne to get into position to make the shot. Sgt. Crowe did not present any evidence to contradict the foregoing testimony.

Thus, even assuming that Sgt. Crowe reasonably believed that Payne was about to kill himself, that he had a legitimate chance of disarming Payne, and that he acted in a heroic and selfless manner, there were still sufficient reasons for the Superintendent to have determined that Sgt. Crowe exercised poor judgment and acted in a manner that was not consistent with Highway Patrol training in taking the shot and, therefore, to have exercised his discretion to suspend Sgt. Crowe. The trial court's determination that the suspension was unlawful, unreasonable, arbitrary, capricious, and the product of an abuse of discretion is not supported by substantial evidence on the record and is against the weight of the evidence. The Superintendent's imposition of an eight-hour suspension without pay was well within the legally vested discretion afforded to him by § 43.150.1, and the trial court had no authority to substitute its own discretion for that of the Superintendent. *Rice,* 858 S.W.2d at 738.

The judgment of the trial court is reversed, and the cause is remanded to the trial court with directions to enter judgment affirming the decision of the Superintendent.

All concur.