

# In the
# Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| JUDY A. TINNIN, | ) | |
| | ) | |
| Respondent, | ) | WD84636 |
| | ) | |
| v. | ) | OPINION FILED: May 31, 2022 |
| | ) | |
| MODOT & PATROL EMPLOYEES' | ) | |
| RETIREMENT SYSTEM, | ) | |
| | ) | |
| Appellant. | ) | |

**Appeal from the Circuit Court of Cole County, Missouri**
The Honorable Cotton Walker, Judge

Before Division Four: Cynthia L. Martin, Chief Judge, Presiding, Anthony Rex Gabbert , Judge and Janet Sutton, Judge

The Missouri Department of Transportation and Highway Patrol Employees' Retirement System ("MPERS") appeals from the trial court's entry of judgment rejecting MPERS's board of trustees' decision to correct a calculation error as to reduce the amount of future monthly benefits to be paid to Judy A. Tinnin ("Tinnin"). MPERS claims that the trial court's judgment erroneously declared and applied the law, was not supported by substantial evidence, and was against the weight of the evidence. Because MPERS was required by statute to correct its error in calculating the monthly benefit amount to be paid

to Tinnin, we reverse the trial court's judgment, and, pursuant to Rule 84.14,[1] enter judgment in favor of MPERS.

### Factual and Procedural Background[2]

Tinnin married Timothy Tinnin ("ex-husband") on June 25, 1983. Ex-husband began working for the Missouri State Highway Patrol ("Highway Patrol") on August 1, 1986. As an employee of the Highway Patrol, ex-husband was a member of MPERS, entitling him to receive a monthly pension benefit upon his retirement.

On February 1, 2008, Tinnin filed a petition for the dissolution of her marriage to ex-husband. On February 14, 2008, MPERS sent Tinnin and ex-husband a written estimate indicating that the monthly retirement benefit ex-husband accrued during the marriage was estimated to be $2,747.59, and noting that the maximum amount a court could award[3] Tinnin was estimated to be $1,373.79 per month, with payment commencing upon ex-husband's retirement. A certified public accountant later determined in a pension valuation report dated October 28, 2008, that the present value of the marital portion of ex-husband's MPERS retirement benefits was $541,527.68.

The parties entered into a separation agreement dividing their marital property. The separation agreement provided that upon ex-husband's retirement, Tinnin would receive

---

[1]All rule references are to the *Missouri Court Rules, Volume I - State* (2021), unless otherwise indicated.
[2]In an appeal from a non-contested case pursuant to section 536.150, we view the evidence and all reasonable inferences drawn therefrom in the light most favorable to the trial court's judgment and disregard all contrary evidence and inferences. *BBCB, LLC v. City of Independence*, 201 S.W.3d 520, 531 (Mo. App. W.D. 2006).

All statutory references are to RSMo 2016, as supplemented through February 2019, except as otherwise noted.

[3]Applicable to this case, the maximum amount the dissolution court could have awarded Tinnin from ex-husband's MPERS's retirement benefit was "fifty percent of the amount of the member's annuity accrued during all or part of the time while the member and alternate payee were married." Section 104.312.1(3).

2

40.77 percent of ex-husband's MPERS retirement benefits that accrued during the marriage. On December 30, 2008, the Circuit Court of Callaway County entered a decree of dissolution ("Dissolution Decree"), which incorporated the terms of the separation agreement. As such, the Dissolution Decree did not award Tinnin a specific amount to be paid each month from ex-husband's MPRES's retirement benefits, and instead awarded Tinnin a monthly benefit upon ex-husband's retirement that equates to 40.77 percent of ex-husband's retirement benefits that accrued during the marriage.

On March 19, 2009, the Circuit Court of Callaway County entered a division of benefits order that directed MPERS to "pay directly to [Tinnin] 40.77% of the monthly benefit accrued during the marriage, otherwise payable to [ex-husband]." Mariel Hale ("Hale"), a senior benefit specialist for MPERS, sent a letter to Tinnin dated July 27, 2009, that stated:

> The monthly retirement benefit accrued from August 1, 1986 (date of employment) to December 30, 2008 (date of divorce), was $6,994.01. The [division of benefits order] indicates Ms. Judy Tinnin was awarded 40.77% of the benefit; therefore, she will receive a monthly benefit in the amount of $2,831.07 at the time [ex-husband] retires.

Hale's letter was in error, as it inadvertently overstated the amount of ex-husband's monthly retirement benefit by using the amount of ex-husband's monthly final average pay at the time. Ex-husband's monthly retirement benefit that accrued during the marriage was actually $3,320.77.

After receiving the July 27, 2009 letter, Tinnin met with a financial advisor to plan for retirement using the assumption that, upon ex-husband's retirement, she would begin receiving $2,831.07 in monthly benefits from MPERS. The financial advisor adjusted

3

Tinnin's retirement investments in reliance on this assumption, and advised Tinnin that she would be able to retire while maintaining a similar standard of living. Tinnin met with the same financial advisor regularly over the years to revisit her retirement strategy, and each time, Tinnin and the financial advisor relied on the assumption that Tinnin would begin receiving $2,831.07 in monthly benefits from MPERS upon ex-husband's retirement.

On July 11, 2018, MPERS sent Tinnin a letter to inform her that ex-husband had applied to retire effective September 1, 2018. The July 11, 2018 letter advised Tinnin that upon ex-husband's retirement, and pursuant to the division of benefits order, Tinnin would begin receiving a monthly payment of $1,353.88.

After receiving the July 11, 2018 letter, Tinnin contacted MPERS and advised that she had been relying on the amount stated in MPERS's July 27, 2009 letter for nine years. MPERS's staff denied Tinnin's request to adjust the amount of the monthly benefit that would be paid to Tinnin upon ex-husband's retirement.

On August 29, 2018, Tinnin's attorney requested a review of staff's decision by MPERS's board of trustees. MPERS's board of trustees reviewed Tinnin's claim on February 21, 2019. The following day, MPERS's general counsel advised Tinnin in writing that the board of trustees agreed with staff's determination that Tinnin's monthly benefit should be $1,353.88. The letter advised Tinnin that, if she wished to pursue the matter further, she would need to seek review in the Circuit Court of Cole County.

Tinnin filed suit against MPERS in the Circuit Court of Cole County on March 19, 2019. Tinnin's petition ("Petition") alleged that the hearing before MPERS's board of trustees was a non-contested case, and sought judicial review of the board's decision

4

pursuant to section 536.150.[4] In Count I, the Petition asked the trial court to conclude that MPERS's refusal to honor the monthly benefit calculation set forth in the July 27, 2009 letter "should be overturned as being unconstitutional, unlawful, unreasonable, arbitrary and capricious, and involving an abuse of discretion." Count II of the Petition asked the trial court to equitably estop MPERS from reducing Tinnin's monthly benefit amount from $2,831.07 to $1,353.88, because MPERS's July 27, 2009 letter constituted affirmative misconduct, Tinnin had reasonably relied on the July 27, 2009 letter for nine years in planning for retirement, and Tinnin suffered damages as a result of that reliance.

MPERS filed an answer ("Answer") denying that Tinnin was entitled to the relief she requested. The Answer asserted that sections 104.200 and 104.1060.1 obligated MPERS to correct the calculation error made in its July 27, 2009 letter. The Answer argued that this statutory obligation foreclosed Tinnin's equitable estoppel claim and that, even if it did not, the mistake in the July 27, 2009 letter was not a result of affirmative misconduct. Finally, the Answer asserted that section 104.312.1(3) precluded Tinnin from receiving more than 50 percent of ex-husband's monthly retirement benefit accrued during the marriage.

Tinnin and MPERS filed a joint stipulation ("Joint Stipulation"), including twenty-two stipulated exhibits, on March 1, 2021. In the Joint Stipulation, the parties agreed to the following facts, among others:

> 2. [Tinnin] has been employed by the Missouri State Troopers Association (MSTA) as an administrative assistant since 1987.

---

[4]The Petition also included an alternative count asking for judicial review of the board of trustees' decision pursuant to section 536.140 should the trial court conclude that board's decision was a contested case.

3. As an administrative assistant at MSTA, [Tinnin] has operated its fax machine and has set and received faxes using its fax machine, including faxes that contained her personal communications.

4. Between 2007-2009, (573) 635-5500 was a telephone number for MSTA, and (573) 636-5572 was a fax number for MSTA.

Stipulated exhibit 1, a copy of the February 14, 2008 written estimate prepared by MPERS shortly after Tinnin filed for dissolution, was addressed to Tinnin from MPERS and included a handwritten notation that it had been "faxed."

A bench trial was held on March 4, 2021. Tinnin testified that the first time she saw the February 14, 2008 estimate was after MPERS informed her that, contrary to the information in the July 27, 2009 letter, her monthly benefit would be $1,353.88. Tinnin denied that she was the one who had written "faxed" on the February 14, 2008 estimate. On cross-examination, however, Tinnin admitted that, during the course of her dissolution proceedings, she "just gave" documents with attached worksheets to her attorney without reviewing the documents or attempting to understand what the documents meant.

The trial court issued its findings of fact, conclusions of law, and judgment on May 28, 2021 ("Judgment"). The Judgment reversed MPERS's board of trustees' decision that Tinnin's monthly benefit should be $1,353.88, and concluded that the decision was "unconstitutional, unlawful, unreasonable, arbitrary, capricious or otherwise involv[ed] an abuse of discretion." The Judgment also concluded that the doctrine of equitable estoppel applied to prohibit MPERS from reducing Tinnin's monthly benefit from the amount communicated in the July 27, 2009 letter because: MPERS's mistaken calculation constituted affirmative misconduct; Tinnin relied on the July 27, 2009 letter to make

6

retirement plans; and Tinnin suffered, and would continue to suffer, financial injury if MPERS were allowed to recalculate her monthly benefit to be $1,353.88.

The Judgment further concluded that the plain language of section 104.200 and section 104.1060 permit MPERS to correct a calculation error only if doing so is "practicable," which the court interpreted to mean "reasonable." The Judgment concluded that it is not reasonable for MPERS to reduce Tinnin's monthly payment nine years after its calculation error, as doing so would "financially devastate Plaintiff, who had no culpability in the error."

Accordingly, the Judgment ordered MPERS to pay Tinnin "$2,831.07 per month, until her death, [sic] the death of [ex-husband] and to pay, as a lump sum, the amount of $1,477.19[5] multiplied by the number of monthly payments it has issued [Tinnin] from and after [ex-husband's] retirement to the date it adjusts the pay to [Tinnin]."

MPERS appeals.

**Standard of Review**

The Missouri Administrative Procedures Act[6] outlines two procedures for judicial review of an administrative proceeding, depending on whether the case is classified as contested or non-contested. *Metro Fill Dev., LLC v. St. Charles Cnty.*, 614 S.W.3d 582, 588 (Mo. App. E.D. 2020).

> Contested cases provide the parties with an opportunity for a formal hearing
> with the presentation of evidence, including sworn testimony of witnesses

---

[5]This represents the difference between the ordered monthly payment of $2,831.07 and the monthly payment of $1,353.88 calculated by MPERS.
[6]Chapter 536.

and cross-examination of witnesses, and require written findings of fact and conclusions of law. The review of a contested case is a review by the trial court of the record created before the administrative body. . . . Non-contested cases do not require formal proceedings or hearings before the administrative body. As such, there is no record required for review. In the review of a non-contested decision, the circuit court does not review the administrative record, but hears evidence, determines facts, and adjudges the validity of the agency decision.

*Lampley v. Mo. Comm'n on Hum. Rts.*, 570 S.W.3d 16, 20 (Mo. banc 2019) (quoting *Furlong Co. v. City of Kansas City*, 189 S.W.3d 157, 165 (Mo. banc 2006)). Whether an administrative hearing is contested or non-contested is a question of law that requires examination "not of what transpired at the administrative proceeding, but what the law requires for that proceeding." *Metro Fill Dev.*, 614 S.W.3d at 588-59 (quoting *Winter Brothers Material Co. v. Cnty. of St. Louis*, 518 S.W.3d 245, 255 (Mo. App. E.D. 2017)).

Chapter 104, the chapter devoted to the retirement of state officers and employees, makes no provision for formal proceedings to review a calculation of benefits, requiring the conclusion that this is an appeal from a non-contested case. Though not controlling, Tinnin and MPERS agree that the proceeding before MPERS's board of trustees was a non-contested case, reviewable pursuant to section 536.150.

Our review of a non-contested case is of "the judgment of the trial court and not the agency." *Sanders v. City of Columbia*, 602 S.W.3d 288, 296 (Mo. App. W.D. 2020). As such, we apply the standard of review used in court-tried cases, as outlined in *Murphy v. Carron*, 536 S.W.3d 30 (Mo. banc 1976). *Id.* "The trial court's judgment will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law." *Id.* (quoting *State ex rel.*

8

*Crowe v. Mo. State Highway Patrol*, 168 S.W.3d 122, 126 (Mo. App. W.D. 2005)). In doing so, we must "accept the trial [court's] credibility determinations and view the evidence in the light most favorable to the judgment, while disregarding all contrary evidence and permissible inferences." *Id.* (quoting *State ex rel. Koster v. Morningland of the Ozarks, LLC*, 384 S.W.3d 346, 350 (Mo. App. S.D. 2012)). A challenge of the trial court's interpretation of a statute, however, concerns an issue of law that we review *de novo*. *State ex rel. Schmitt v. Choi*, 627 S.W.3d 1, 6 (Mo. App. W.D. 2021).

**Analysis**

MPERS presents six points on appeal. Point One alleges that the trial court committed legal error in interpreting section 104.200 and section 104.1060.1 (collectively "correction statutes") to limit MPERS's statutory obligation to correct benefit calculation errors to only those corrections that are reasonable. Points Two through Five challenge the Judgment's conclusions that MPERS was equitably estopped from correcting the calculation error in its July 27, 2009 letter. Point Six alleges that the trial court's award of a $2,831.07 monthly benefit to Tinnin violates section 104.312.1(3) by awarding Tinnin more than 50 percent of ex-husband's retirement benefit that accrued during the marriage.

***Point One: The trial court committed legal error when it construed the correction statutes to impose a reasonableness limitation on MPERS's obligation to correct calculation errors.***

In Point One, MPERS argues that the correction statutes require it to correct errors made in calculating benefits, and that the trial court committed legal error by construing the correction statutes to limit MPERS's ability to correct calculation errors to those corrections that are reasonable.

9

The primary rule of statutory interpretation is to give effect to legislative intent, as set forth by the plain language of the statute. *Fitzpatrick v. Ashcroft*, 640 S.W.3d 110, 118 (Mo. App. W.D. 2022). Section 1.090 instructs that "[w]ords and phrases shall be taken in their plain or ordinary and usual sense." Accordingly, if a word is not statutorily defined, it is given its ordinary meaning, as set forth in the dictionary. *Gross v. Parson*, 624 S.W.3d 877, 884 (Mo. banc 2021). We will not look beyond the plain language of the statute and resort to rules of statutory construction unless the statute's language is ambiguous or would lead to an absurd illogical result. *State ex rel. Schmitt*, 627 S.W.3d at 7.

Section 104.200, which is applicable to all MPERS's retirement plans, and section 104.1060.1, which is applicable to the year 2000 plan, address benefit calculation errors made by MPERS.[7] The statutes are virtually identical. Section 104.200 provides:

> Should any error in any records result in any member's [sic] or beneficiary's [sic] receiving more or less than he would have been entitled to receive had the records been correct, ***the board shall correct such error, and, as far as practicable, make future payments in such a manner that the actuarial equivalent of the benefit to which such member or beneficiary was entitled shall be paid, and to this end may recover any overpayments***. In all cases in which such error has been made, ***no such error shall be corrected unless the system discovers or is notified of such error within ten years after the initial date of error***.

(Emphasis added.) Section 104.1060.1 provides:

> Should any error result in any person receiving more or less than the person would have been entitled to receive had the error not occurred, ***the board shall correct such error, and, as far as practicable, make future payments***

---

[7]Eligible participants in the year 2000 plan applies are employees of the Missouri Department of Transportation and the Highway Patrol who first became employed on or after July 1, 2000, or who were already members of the MPERS closed plan on that date and elected to be covered by the year 2000 plan. *See* section 104.030; section 104.1009. While ex-husband was employed by the Highway Patrol prior to July 1, 2000, the record does not reflect which plan he was participating in at the time of his retirement. That omission does not impair our ability to conduct appellate review in this case because the correction statutes are virtually identical.

10

*in such a manner that the actuarial equivalent of the annuity to which such person was entitled shall be paid, and to this end may recover any overpayments*.  In all cases in which such error has been made, *no such error shall be corrected unless the system discovers or is notified of such error within ten years after the initial date of error*.

(Emphasis added.)

It is uncontested that MPERS's July 27, 2009 letter to Tinnin included a calculation error; that the calculation error was discovered by MPERS and reported to Tinnin before Tinnin was entitled to start receiving monthly benefits; and that the error was discovered by MPERS within ten years of the initial date of the error.  The parties disagree, however, about whether the correction statutes permitted MPERS to correct the calculation error.

MPERS contends that the phrase "the board shall correct such error" is unequivocal, and is not qualified by the phrase "as far as practicable," as the latter phrase applies only to determining whether it is practicable to make an actuarial adjustment of future payments to pay what should have been paid, subject to the recovery of overpayments.  Tinnin contends that the phrase "as far as practicable" qualifies the directive that "the board shall correct such error," so that MPERS may only make an adjustment to future payments to the extent "practicable," which Tinnin asserts requires consideration of the reasonableness of doing so based on the circumstances.

The parties' disagreement about the meaning of the correction statutes does not automatically render the correction statutes ambiguous.  *State v. Beck*, 581 S.W.3d 97, 102 (Mo. App. W.D. 2019).  Instead, "[a] statute is ambiguous when its plain language does not answer the current dispute as to its meaning."  *J.B. v. Vescovo*, 632 S.W.3d 861, 865

11

(Mo. App. W.D. 2021) (quoting *Kersting v. Replogle*, 492 S.W.3d 600, 603 (Mo. App. W.D. 2016)).

The plain language of the correction statutes resolves the current dispute about their meaning. The correction statutes provide that MPERS's "board shall correct such error," referring to any calculation error that results in a person receiving a payment that is more or less than what should have been paid. "The word 'shall' generally prescribes a mandatory duty."[8] *Gross*, 624 S.W.3d at 889 (quoting *State v. Teer*, 275 S.W.3d 258, 261 (Mo. banc 2009)). MPERS's mandatory duty to correct calculation errors is subject to an express temporal restriction, as the correction statutes prohibit MPERS from correcting a calculation error unless it is discovered within ten years of the initial date of error.

MPERS's mandatory duty to correct calculation errors is not further qualified, however, by the correction statutes. The phrase "the board shall correct such error" is followed by a comma and the word "and." The legislature typically uses the word "and" as a conjunction, not a disjunction. *Stiers v. Dir. of Revenue*, 477 S.W.3d 611, 615 (Mo. banc 2016).

"The use of conjunctions and the placement of commas within a statute are crucial" in determining the legislature's intention from the plain language used in a statute. *Savage*

---

[8]This Missouri Supreme Court holding that "shall" suggests a mandatory duty to undertake a required act should not be confused with the holding in *Frye v. Levy*, 440 S.W.3d 405 (Mo. banc 2014). There, the Court held that when the legislature uses the word "shall" in a statute, the issue "is not whether 'shall' means 'shall' but what sanction (if any) the legislature intended to apply" if the required act is not done. *Id.* at 408. The issue in *Frye*, however, was not whether a statute's use of the word "shall" imposed a duty to undertake a required act, but instead whether a consequence for noncompliance with a required act can be imposed. In that context, *Frye* held that a statute is merely directory if it does not specify a consequence for noncompliance, such that "courts will not create a sanction or consequence for noncompliance where the legislature has not expressed an intent for such sanction or consequence." *Countryclub Homes, LLC V. Mo. Dep't of Nat. Res.*, 591 S.W.3d 882, 891 (Mo. App. W.D. 2019) (citing *Frye*, 440 S.W.3d at 409).

12

*v. Dittrich*, 589 S.W.3d 628, 635 (Mo. App. E.D. 2019). "The general rule is that when a conjunction connects two coordinate clauses or phrases, a comma should precede the conjunction *if it is intended to prevent following qualifying phrases from modifying the clause which precedes the conjunction*." *Application of Graham*, 199 S.W.2d 68, 74-75 (Mo. App. 1946) (emphasis added) (citing *Jones Practical English Composition* 66 (3d ed. 1941). Here, the conjunction "and" in the correction statutes is preceded by a comma, signaling that the phrase "as far as practicable" (the following qualifying phrase) does *not* modify the phrase "the board shall correct such error" (the clause which precedes the conjunction).

Instead, the phrase "and, as far as is practicable" qualifies the subsequent statutory directive that MPERS is to make *future* payments in an amount that is the actuarial equivalent of the benefit the person should have received, "and to this end [MPERS] *may recover any overpayments*." "Practicable" is defined as "possible to practice or perform; capable of being put into practice, done, or accomplished." *Webster's Third New International Dictionary* 1780 (1993). Thus, the plain language of the correction statutes permits MPERS to recover overpayments (if any) from recalculated future payments, but only if it is "practicable" (possible) to do so from the recalculated future payments remaining to be paid after an error is discovered.

We therefore conclude that the trial court committed legal error by interpreting the phrase "as far as practicable" in the correction statutes as qualifying MPERS's mandatory duty to correct discovered calculation errors, and that the trial court committed further legal error by construing the term "practicable" to mean reasonable in its effect on the person

13

entitled to receive benefits. In doing so, the trial court effectively rewrote the correction statutes to provide that "the board shall, *if reasonable in its effect on a person receiving benefits*, correct [] error[s]" that result in an over or underpayment. "[We] avoid interpreting statutes to include qualifiers where '[s]uch an interpretation impermissibly adds language to the statute.'" *BHA Grp. Holding, Inc. v. Pendergast*, 173 S.W.3d 373, 379 (Mo. App. W.D. 2005)) (quoting *Kincade v. Treasurer of State of Mo.*, 92 S.W.3d 310, 312 (Mo. App. E.D. 2002)). And where a term in a statute is not statutorily defined, we give the word its ordinary meaning as set forth in the dictionary, with preference shown to *Webster's Third New International Dictionary*. *Gross*, 624 S.W.3d at 884 (holding that if a word is not statutorily defined, it is given its ordinary meaning, as set forth in the dictionary); *AAA Laundry & Linen Supply Co. v. Dir. of Revenue*, 425 S.W.3d 126, 132 (Mo. banc 2014) (noting that *Webster's Third International Dictionary* is "the institutional dictionary of choice" of the Missouri Supreme Court).

The correction statutes obligated the MPERS's board to correct the calculation error, which was discovered within ten years of the time it was initially made in the July 27, 2009 letter and before Tinnin had been paid any benefits. It was practicable, therefore, for MPERS to recalculate Tinnin's future payments in the correct amount of $1,353.88 per month commencing on ex-husband's retirement, with no need for MPERS to attempt to recover overpayments from the future benefits.

Point One is granted.

***Points Two, Three, Four, and Five: The trial court erroneously concluded that MPERS was equitably estopped to recalculate Tinnin's future monthly benefit payments because this conclusion is at odds with the plain language of the correction statutes.***

14

MPERS's second point on appeal alleges that the trial court committed legal error when it concluded that the doctrine of equitable estoppel precluded MPERS from exercising the mandatory duty described in the correction statutes to correct a discovered calculation error. MPERS's third, fourth, and fifth points on appeal challenge whether, based on the law and the evidence presented at trial, the doctrine of equitable estoppel applied. MPERS's second point on appeal is controlling.

"Generally, equitable estoppel, 'should not be deployed in a manner that countermands the clear intent and language of the legislature . . . .'" *New Garden Rest., Inc. v. Dir. of Revenue*, 471 S.W.3d 314, 319 (Mo. banc 2015) (quoting *Boland v. Saint Luke's Health Sys., Inc.*, 471 S.W.3d 703, 712 (Mo. banc 2015)). If the rights of a party are clearly defined by statute, courts sitting in equity may not ignore the statute to create a remedy that it deems more just than the statute. *See Milgram v. Jiffy Equip. Co.*, 247 S.W.2d 668, 676-77 (Mo. 1952).

> Equity Courts may not disregard a statutory provision, for where the Legislature has enacted a statute which governs and determines the rights of the parties under stated circumstances, equity courts equally with courts of law are bound thereby. Equity follows the law more circumspectly in the interpretation and application of statute law than otherwise.

*Boland*, 471 S.W.3d at 712 (emphasis omitted) (quoting *Milgram*, 247 S.W.2d at 676-77).

We have already explained that the correction statutes impose a mandatory duty on MPERS to correct calculation errors discovered within ten years of the initial error, and that this duty is not qualified by the phrase "as far as practicable." We have also explained that the term "practicable" does not equate with whether it is reasonable or fair to

15

recalculate future benefits given the circumstances of the recipient. Accordingly, the trial court committed legal error when it applied the doctrine of equitable estoppel to disregard the plain language of the correction statutes. MPERS's mandatory duty to correct calculation errors is not subject to principles of equity.

Point Two is granted. Points Three, Four, and Five are denied as moot.

*Point Six:  We need not address the applicability of section 104.312.1(3).*

MPERS's sixth point on appeal asserts that, in ordering MPERS to pay Tinnin $2,831.07 per month, the trial court overlooked and erroneously applied section 104.312.1(3), which provides that a dissolution decree may not award a member's former spouse more than 50 percent of the member's vested annuity at the time of the dissolution of marriage. Because we have otherwise concluded that the trial court committed error in awarding Tinnin $2,831.07 in monthly benefits from ex-husband's MPERS retirement plan, we need not address this point.

Point Six is denied as moot.

**Conclusion**

The Judgment is reversed. Pursuant to our authority under Rule 84.14 to "give such judgment as the court ought to give," we enter judgment in favor of MPERS and against Tinnin on all claims asserted in Tinnin's Petition. As such, Tinnin's monthly benefit payable from MPERS shall be in the amount of $1,353.88. If MPERS has paid Tinnin higher monthly benefits or back pay as a result of the trial court's Judgment, MPERS shall

16

be entitled to adjust future monthly benefits paid to Tinnin to recover any overpayment to the extent practicable pursuant to the correction statutes.


_____
Cynthia L. Martin, Judge

All concur