

# Missouri Court of Appeals
## Southern District

### In Division

KAYLA WILLIAMS, )
)
      Plaintiff-Respondent, )
)
      v. )     No. SD37731
)
MISSOURI STATE BOARD OF )     **Filed: April 24, 2024**
NURSING, )
)
      Defendant-Appellant. )

APPEAL FROM THE CIRCUIT COURT OF BUTLER COUNTY

The Honorable Michael M. Pritchett, Judge

## VACATED AND REMANDED WITH INSTRUCTIONS

The Missouri State Board of Nursing ("Board") appeals the trial court's judgment reversing the suspension of Kayla Williams's ("Williams") nursing license. It raises five points on appeal. We find merit in the Board's fourth point relied on and vacate the trial court's judgment. This case is remanded back to the trial court with instructions to enter a judgment reinstating the Board's disciplinary order against Williams.

### Factual Background and Procedural History

Williams is licensed as a Registered Professional Nurse by the Board. On December 1, 2020, Williams took a pre-employment urine drug screen before beginning work as a travel nurse for Mercy South in St. Louis. Her drug screen was positive for

marijuana, and Mercy South terminated Williams's assignment. The only explanation Williams ever provided for the positive test result was her use of CBD oil for general anxiety and pain related to her multiple sclerosis, and she denied ever using marijuana or having been treated for or having any issues with drugs or alcohol. The Board received a complaint following Williams's positive drug screen and began an investigation.

Following its investigation, the Board proposed Williams participate in an intervention program or surrender her nursing license. On June 8, 2021, Williams agreed to take part in the intervention program pursuant to section 335.067 and signed a Non-Disciplinary Consent Agreement ("Consent Agreement") with the Board.[1] The Consent Agreement became effective on June 9, 2021, placing Williams on probation for one year with specified monitoring terms, including a minimum of one year of successful drug and alcohol screenings. Per the Consent Agreement, Williams was required to contract with a third-party administrator for random drug and alcohol screens and check in on the administrator's website every day between 5:00 a.m. and 4:00 p.m. to confirm whether she had been selected for testing. If selected, she was further required to submit to screening "prior to a collection site closing for business on the day [Williams was] selected to be tested." The testing facility closest to Williams closed at 4:00 p.m. each day, and the failure to submit to a drug and alcohol screening on the date requested was a violation of the Consent Agreement. If Williams successfully completed the intervention program, her license would be fully restored, and her participation in the program would not be deemed a disciplinary action subject to disclosure.

---

[1] All references to section 335.067 are to RSMo Cum.Supp. 2022.

As a night shift nurse, Williams regularly checked in with her third-party administrator at 5:25 a.m. every morning. She was called in for screening on "average" once a week. Prior to August 19, 2021, Williams successfully checked in daily and submitted to screenings when selected, having missed no check-ins or tests. On October 19, 2021, Williams was on vacation from work when she checked in at 5:25 a.m., and she was told she was required to submit to screening that day. Her local testing facility did not open until 7:00 a.m., so she went back to sleep. When she awoke later that morning, she saw she had an email from her mortgage lender which required her to complete, in Williams's words, "like seventy-five different things" to secure a home loan. After sending the necessary documents to her lender, she did some household chores and prepared for her son's school orientation that night. This orientation took longer than expected. Once she got home at 8:00 p.m., Williams remembered she had not gone to do her drug and alcohol screen that day as required.

Williams called her third-party administrator's emergency number in a panic and left a voicemail after there was no answer. Williams also called a number she had for the Board. No one answered, and she left a voicemail. Since her local testing facility was already closed, she went through the list of available laboratories in the state to see if one was still open. The nearest laboratory that was still open was in Jefferson City, three and a half to four hours away from Williams's home. This laboratory was open 24 hours a day, but Williams believed she could not have made it there in time to complete a drug screen before midnight, making the trip pointless.

Rather than traveling to Jefferson City, Williams went to her local laboratory the next morning on August 20, 2021. Her drug screen was timed at 7:13 a.m., and the drug

screen results were negative. Neither the Board nor the third-party administrator ever returned Williams's voicemails.

On August 23, 2021, the Board sent Williams a notice of violation letter for failing to provide a urine drug screen as required on August 19, 2021. In a letter dated August 26, 2021, Williams's attorney explained Williams missed the drug screen "due to simply [sic] inadvertence and scheduling stresses" and argued "[t]he totality of the circumstances and simple understanding demand that her probation not be rescinded." Williams signed the letter and attested "these facts are true and accurate." While Williams and her attorney believed the letter served as an objection to the alleged violation because it provided evidence that the missed drug screen was unintentional and by mistake, the Board interpreted Williams's letter as an admission she violated the terms of the Consent Agreement by failing to submit to a drug screen. The Board then issued its Findings of Fact, Conclusions of Law, and Disciplinary Order ("Order") suspending her nursing license without a hearing per section 335.067.6. Pursuant to the Order, Williams's suspension was to last a minimum of 12 months and until she completed an additional year of testing under the Consent Agreement with no positive drug or alcohol screens.

On September 23, 2021, Williams filed a verified petition with the trial court challenging the Order and seeking an injunction. She argued the letter to the Board was a proper objection to the alleged violation of the Consent Agreement and warranted a basis for a hearing before the Board. The next day, September 24, 2021, Williams filed her Motion for Temporary Restraining Order and Preliminary Injunction, asking the trial

4

court to enjoin the Board from enforcing the Order. The trial court sustained Williams's request for a temporary restraining order, finding:

> the action of the [Board] in refusing to consider correspondence from [Williams's] former counsel as an 'objection' to its Notice of Violation and thereafter proceeding to the entry of an Order suspending [Williams's] license without [a] hearing and the opportunity for participation by [Williams], deprived [Williams] of due process and was arbitrary, capricious and unreasonable.

The trial court enjoined the Board from enforcing its Order suspending Williams's nursing license, and Williams continued working as a travel nurse.

The trial court subsequently held a bench trial where Williams was the only witness. She testified that she continued to be selected for drug screening "[a]pproximately weekly" after the trial court issued its temporary restraining order, that there were no "problems" with her tests, and she had not missed any reporting or testing requirements other than the drug screen scheduled on August 19, 2021. On August 26, 2022, the trial court issued its judgment in favor of Williams and determined that "the Board's [] Order is unlawful, unreasonable, arbitrary, and capricious." The trial court's judgment "overturned and reversed" and permanently enjoined the Board's Order, and it found the Consent Agreement "by its own terms now expired and that [Williams] is hereby released from same." This appeal followed.

## Points on Appeal

The Board raises five points on appeal, but Point IV alone is dispositive. In its fourth point, the Board argues the trial court erred in overturning the Board's Order because it misapplied the law in that it "failed to properly consider Williams's violation of the Intervention Program by applying mitigating factors not permitted under [s]ection 335.067 and failed to remand the matter to the Board in light of finding that she had

5

denied violating the program." Because the Board's Point IV groups together two, independent claims for how the trial court misapplied the law, "it is multifarious in violation of Rule 84.04."[2] *Witherspoon v. Thurmond*, 642 S.W.3d 784, 785 n.1 (Mo. App. S.D. 2022). A multifarious point preserves nothing for appellate review and warrants dismissal. *Id.* We nonetheless exercise our discretion to review the Board's argument *ex gratia* here because it is readily understandable and, therefore, our impartial review is not materially impeded. *See Taneycomo Lakefront Resort & RV Park, LLC v. Empire Dist. Elec. Co.*, No. SD37923, 2024 WL 937481, at *2 (Mo. App. S.D. Mar. 5, 2024) (granting an appellant's point where "impartial review [was] not materially impeded" despite briefing deficiencies); *see also State v. Robinson*, 454 S.W.3d 428, 437 n.6 (Mo. App. W.D. 2015) (reviewing a multifarious point on its merits and granting relief).

We accordingly review the merits of the Board's first claim of error within Point IV: that the trial court misapplied the law by applying mitigating factors not permitted under section 335.067. *See Cedar Cnty. Comm'n v. Parson*, 661 S.W.3d 766, 772 (Mo. banc 2023) ("When the point is multifarious, such *ex gratia* review can be limited to one of the improperly combined points, often the first one."). Because the first contention in Point IV has merit and requires reversal of the trial court's judgment, we need not consider Points I, II, III, or V.[3]

---

[2] All rule references are to Missouri Court Rules (2023), unless otherwise indicated.

[3] The Board argues in its remaining points on appeal that the trial court erred: by concluding "the Board was unlawful, unreasonable, arbitrary, and capricious, because there is no substantial evidence to support this conclusion, in that both [s]ection 335.067 and the Consent Agreement state that a violation of the program mandates suspension of a licensee's nursing license" (Point

**Standard of Review**

"In order to properly perform our appellate function in a judicial review proceeding, we must first determine whether the underlying administrative case was contested or non-contested, even if the parties do not raise the issue." ***Sovulewski v. Mo. State Bd. of Nursing***, 642 S.W.3d 373, 377-78 (Mo. App. E.D. 2022). Here, the parties agree this Court's review is that of a non-contested case per section 536.150.[4] A non-contested case is "a decision that is not required by law to be determined after a hearing." ***State ex rel. Robison v. Lindley-Myers***, 551 S.W.3d 468, 471 (Mo. banc 2018) (quoting ***Furlong Cos. v. City of Kan. City***, 189 S.W.3d 157, 165 (Mo. banc 2006)). As the Supreme Court of Missouri has further explained:

> Non-contested cases do not require formal proceedings or hearings before the administrative body. As such, there is no record required for review. In the review of a non-contested decision, the circuit court does not review the administrative record, but hears evidence, determines facts, and adjudges the validity of the agency decision.

***Ard v. Shannon Cnty. Comm'n***, 424 S.W.3d 468, 472 (Mo. App. S.D. 2014) (quoting ***Furlong Cos.***, 189 S.W.3d at 165). Under this procedure, a trial court conducts a *de novo*

---

I); by concluding the Board's failure to provide a hearing was unlawful, unreasonable, arbitrary, and capricious, because there is no substantial evidence to support that conclusion, "in that Williams had admitted to violating the terms of the Intervention Program and the Consent Agreement, which then did not require a hearing before the Board and mandated suspension of her nursing license, and that even if Williams properly objected to the Notice of Violation, the trial court could not substitute discretion legally vested in the Board" (Point II); by concluding the Consent Agreement had expired because there is no substantial evidence to support that conclusion (Point III); and by overturning the Order because the trial court erroneously declared the law, in that the trial court considered factors outside the scope of section 335.067 and "cited case law applicable to petitions for judicial review of contested cases" (Point V).

[4] All references to section 536.150 are to RSMo 2016.

7

review "in which it hears evidence on the merits of the case, makes a record, determines the facts, and decides whether, in view of those facts, the agency's decision is unconstitutional, unlawful, unreasonable, arbitrary, capricious, or otherwise involves an abuse of discretion." *Mo. Nat'l Educ. Ass'n v. Mo. State Bd. of Educ.*, 34 S.W.3d 266, 274 (Mo. App. W.D. 2000). The trial court may not, however, "substitute its discretion for discretion legally vested in such administrative officer or body[.]" Section 536.150.1.

On appeal from a trial court's evaluation of a non-contested case, appellate courts review the trial court's judgment rather than the underlying administrative agency's decision. *McGibney v. Mo. Dep't of Nat. Res.*, 653 S.W.3d 665, 671 (Mo. App. S.D. 2022); *Sovulewski*, 642 S.W.3d at 379. Thus, the standard of review is that of any other court-tried case and "is governed by Rule 73.01 as construed in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976)." *State ex rel. Crowe v. Mo. State Highway Patrol*, 168 S.W.3d 122, 126 (Mo. App. W.D. 2005). The trial court's judgment will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. *Id.* "This standard requires an appellate court to accept the trial court's credibility determinations and view the evidence in the light most favorable to the judgment, while disregarding all contrary evidence and permissible inferences." *McGibney*, 653 S.W.3d at 671-72 (quoting *Ard*, 424 S.W.3d at 473). Statutory interpretation and other questions of law are reviewed *de novo*. *BG Olive & Graeser, LLC v. City of Creve Coeur*, 658 S.W.3d 44, 46 (Mo. banc 2022).

## Analysis

### The Law at Issue

The Board argues under Point IV that the trial court misapplied the law "by applying mitigating factors not permitted under Section 335.067[.]" The absence of relevant citations in the parties' briefs and our own research indicate a lack of Missouri case law interpreting this statute. We must therefore interpret the statute as written. "This Court's primary rule of statutory interpretation is to give effect to legislative intent as reflected in the plain language of the statute at issue." ***Kubiak v. Mo. State Bd. of Nursing***, 667 S.W.3d 230, 236 (Mo. App. W.D. 2023) (quoting ***Parktown Imps., Inc. v. Audi of Am., Inc.***, 278 S.W.3d 670, 672 (Mo. banc 2009)).

From its plain language, section 335.067 authorizes the Board to establish an intervention program "to promote the identification, intervention, treatment, and monitoring of nurses or applicants for a nursing license who may be impaired by reason of substance abuse or the potential for substance abuse." Section 335.067.1. The Board may offer the intervention program to nurse licensees who test positive in pre-employment drug or alcohol screens and other qualifying individuals. Section 335.067.2. The program at issue requires a minimum one-year period of random drug and alcohol testing at the participant's expense. *Id.* The Board and licensees may also enter into written agreements "setting forth the requirements of the program." Section 335.067.4. Licensees may avoid the complaint adjudication processes under Chapter 335 and Chapter 324 by accepting the intervention program's requirements. *Id.*

If a licensee violates any term of the intervention program and denies the violation, "the [B]oard may convene a hearing, after due notice to the licensee . . . to

9

determine whether such violation has occurred." Section 335.067.6. Conversely, if the licensee admits to the violation, "no hearing is required." *Id.* Section 335.067.6 further requires:

> If a violation is found by the [Board] or admitted to by the licensee . . . , the licensee's license shall be indefinitely suspended . . . until the licensee . . . continues to fully participate in the program, has one year with no positive drug or alcohol screens, and completes a sobriety notebook.

*Id.* "Admission" and "denial" are not defined under Chapter 335, and we therefore use their plain and ordinary meanings. *See Kubiak*, 667 S.W.3d at 236. An "admission" is a "statement in which someone admits that something is true or that he or she has done something wrong[,]" while a "denial" is a "statement that something is not true[.]" BLACK'S LAW DICTIONARY (11th ed. 2019).

Here, Williams's Consent Agreement served as a "written agreement" setting the terms of her intervention program. *See* section 335.067.4. As such, it was functionally a settlement agreement with the Board to defer prosecution in exchange for Williams's participation in the intervention program. Missouri courts generally treat settlement agreements, including those with state agencies, as contracts. *See Lacey v. State Bd. of Registration for the Healing Arts*, 131 S.W.3d 831, 838 (Mo. App. W.D. 2004) (concluding a disciplinary agreement between a doctor and a state agency was an enforceable settlement). We similarly view written agreements under section 335.067 as contracts subject to the principles of contract interpretation. Accordingly, the Consent Agreement should be read as a whole to ascertain the parties' intent; and we construe its terms using their plain, ordinary, and usual meaning. *State ex rel. Reg'l Convention v. Burton*, 533 S.W.3d 223, 226 (Mo. banc 2017).

10

<u>The Trial Court Misapplied the Law by Considering Mitigating Factors Not Permitted</u>
<u>Under Section 335.067 or the Consent Agreement</u>

The Consent Agreement required Williams to contact her third-party administrator every day to see if she was required to submit to a drug screen. By its terms, Williams had to "submit to drug and alcohol screening prior to a collection site closing for business on the day that [she] is selected to be tested." It continued: "Failure to timely submit to drug and alcohol screening by the end of the business day of the collection site when selected by the [third-party administrator] shall constitute a violation of this **AGREEMENT**."

The trial court, following the Consent Agreement's express terms, found the Consent Agreement required Williams to contact her third-party administrator daily and to submit to screening before a collection site closed for business once she was selected for testing. It also found Williams was required to perform a drug screen with her third-party administrator on August 19, 2021; but she neglected to do so because of the intervening mortgage paperwork, household chores, and her son's school orientation. The trial court additionally determined Williams's letter to the Board said she "missed the morning drug screen due to simply [sic] inadvertence and scheduling stresses."

Viewing the evidence in the light most favorable to the judgment and its findings, Williams's letter clearly admits she failed to submit to a drug screen on the day she was required to do so. Though the letter requested the Board not rescind her probation because the missed drug screen was unintentional, it did not deny she missed the required drug screen on the day in question. Because Williams admitted to breaking a term of her intervention program as set forth in the Consent Agreement, no hearing was required under section 335.067.6. The Board was then required to indefinitely suspend Williams's

11

nursing license "until [Williams] . . . continue[d] to fully participate in the program, ha[d] one year with no positive drug or alcohol screens, and complete[d] a sobriety notebook." Section 335.067.6.

However, and despite the statute's clear language, the trial court determined the Board's Order suspending Williams's license was arbitrary, capricious, and unreasonable because the Board refused to consider Williams's letter as an "objection" and denied "her ability to present substantial evidence of compliance with the spirit of the [O]rder. . . . which could have been considered in mitigation of the action ultimately taken by the Board[.]" This conclusion was a misapplication of the law under section 335.067. Whether the letter was an "objection" is immaterial as section 335.067 does not use this term. It instead focuses on whether a licensee admits or denies a violation, and it provides no process for the Board to weigh mitigating factors or evidence of compliance with a consent agreement's "spirit." *See* section 335.067.6. We recognize Williams's efforts after she missed her drug screen indicate her mistake was genuine, and it is unlikely she used marijuana on August 19, 2021, given her negative test result the next day. *See **State v. Book***, 436 S.W.3d 671, 675 n.2 (Mo. App. S.D. 2014) (noting the half-life of carboxy-THC is about one to two and a half days). But these considerations have no bearing on the plain and unequivocal language of section 335.067 and the terms of the Consent Agreement.

Once the factual findings revealed the Board's Order was lawful and within the Board's discretion, the trial court could not substitute its own discretion and had to "conclude that the [Board] exercised its discretion lawfully." ***Sanders v. City of Columbia***, 602 S.W.3d 288, 296 (Mo. App. W.D. 2020). The trial court "should have

12

reviewed the [Board's] determination based upon the evidence rather than making its own independent decision" that Williams should have been able to present evidence of mitigating factors. *BG Olive & Graeser*, 658 S.W.3d at 48; *see also* section 536.150.1 ("[T]he court shall not substitute its discretion for discretion legally vested in such administrative office or body."). The first assertion in Point IV is granted, and it is dispositive.

## Conclusion

The trial court misapplied the law by considering mitigating factors outside the scope of section 335.067 and the Consent Agreement. We therefore vacate the trial court's judgment and remand to the trial court with directions to enter a judgment reinstating the Board's Order.

JENNIFER R. GROWCOCK, J. – OPINION AUTHOR

JACK A. L. GOODMAN, C.J. – CONCURS

DON E. BURRELL, J. – CONCURS

13